### THE STATE v. ABRAM ROSENBERGER, Appellant.

**In Banc, June 6, 1908.**

1. **PURCHASE OF GOODS: Place: C. O. D. Shipment.** The place of sale of goods, made upon an order by a private citizen, to ship him designated goods by express C. O. D., is the place of shipment, and not the place of delivery, unless there is an express contract to the contrary between the shipper and consignee.

2. ——: ——: ——: **Local Option Law.** Morton, a resident of Webster county, ordered a gallon of whiskey from defendant's company in Kansas City, and it was sent in a package marked C. O. D., and Morton paid the express agent the price thereof at the time it was delivered to him, and the agent sent the money to defendant's office in Kansas City. *Held*, that Kansas City was the place of the sale, that the sale was complete

State v. Rosenberger.

when the liquor was shipped there, and defendant did not violate the Local Option Law then in force in Webster county. [Overruling *obiter dicta* in State v. Wingfield, 115 Mo. 428, and Canton v. McDaniel, 188 Mo. 207.]

Appeal from Webster Circuit Court.—*Hon. Argus Cox*, Judge.

REVERSED.

*Clyde Taylor, E. H. Gamble, J. E. Haymes* and *J. C. Rosenberger* for appellant.

(1) The place of sale was in Jackson county, and hence no offense was committed in Webster county. Keller v. State of Texas, 87 S. W. 669; Ryan v. Railroad, 65 Tex. 16; Life Assn. v. Harris, 94 Tex. 25; Cook Distilleries Co. v. Railroad, L. R. 7 H. L. 269; Johnson v. Railroad, L. R. 3 C. P. Div. 499, where under somewhat curious circumstances, the same rule was applied; Krulder v. Ellison, 47 N. Y. 36; Pacific Iron Works v. Railroad, 62 N. Y. 272; Mee v. McNider, 39 Hun 345; The Mary, 1 Wheat. 25; Stanton v. Eager, 16 Pick. 467; Magruder v. Gage, 33 Md. 344; Bailey v. Railroad, 49 N. Y. 70; Gutwillig v. Zuberbier, 41 Hun 361; Stafford v. Walter, 67 Ill. 83; Whiting v. Farrand, 1 Conn. 60; Ranney v. Higby, 4 Wis. 154; Blum v. The Caddo, 1 Woods 64; Wing v. Clark, 24 Me. 366; Schmertz v. Dwyer, 53 Pa. St. 335; Putnam v. Tillotson, 13 Met. 517; Griffith v. Ingledew, 6 Serg. & R. 429; Waldron v. Romaine, 22 N. Y. 368; Grove v. Brien, 8 How. 438; Hunter v. Wright, 12 Allen 548; Kelsea v. Mfg. Co., 55 N. J. L. 320; Lawrence v. Minturn, 17 How. 107; Claflin v. Railroad, 7 Allen 341; Odell v. Railroad, 109 Mass. 50; Johnson v. Stoddard, 100 Mass. 306; Torrey v. Corliss, 33 Me. 336; Armentrout v. Railroad, 1 Mo. App. 158; Ober v. Smith, 78 N. C. 313; Railroad v. Wireman, 88 Pa. St. 264; Summeril v. Elder, 1 Binn. 106; Swanke v. Mc-

Carty, 81 Wis. 109; Whitman Agri. Co. v. Strand, 8 Wash. 647; Embree-McLean Carriage Co. v. Lusk, 11 Tex. Civ. App. 493; Taylor v. Victoria Co-Op. Store Co., 26 N. S. 223, following Fragano v. Long, 4 Barn. & C. 219; Falvey v. Richmond, 87 Ga. 99; Mann v. Glauber, 96 Ga. 795; Brooks v. Geo. H. Field Paper Co., 94 Tenn. 701; Black, Intoxicating Liquors, sec. 434; State v. Flanagan, 38 W. Va. 53. For a collation of some of the authorities supporting the decisions of this court, see: 22 L. R. A., note on page 426; State v. Carl, 43 Ark. 353; Smith v. State (Ark.), 16 S. W. 2; Williams v. Feiniman, 14 Kan. 288; Haug v. Gillett, 14 Kan. 140; Banchor v. Warren, 33 N. H. 183; Boothby v. Plaisted, 51 N. H. 436; Carthage v. Duvall, 202 Ill. 234; Carthage v. Munsell, 203 Ill. 474; Farmers' Phosphate Co. v. Gill, 69 Md. 537; Sarbecker v. State, 65 Wis. 171; State v. Intoxicating Liquors, 73 Me. 278; Com. v. Fleming, 130 Pa. St. 138; Sachs v. Garner, 111 Iowa 424; Tegler v. Shipman, 33 Iowa 194; Taylor v. Pickett, 52 Iowa 467; Pilgreen v. State, 71 Ala. 369; United States v. Lackey, 120 Fed. 577; De Bary v. Souer, 41 C. C. A. 417; Railroad v. Sims, 191 U. S. 441; Shuenfeldt v. Junkermann, 20 Fed. 357; State v. Cairns, 64 Kan. 782; James v. Com., 102 Ky. 108; Garbracht v. Com., 96 Pa. St. 449; Higgins v. Murray, 73 N. Y. 252; Bunn v. State, 82 Ga. 27; Crook v. Cowan, 64 N. C. 743; State v. Shields, 110 La. Ann. 547; State v. Colby, 92 Iowa 463; State v. Peters, 91 Me. 31; United States v. Orene Parker Co., 121 Fed. 596; Newman v. State, 88 Ala. 115; Hunter v. State, 55 Ark. 357; Berger v. State, 50 Ark. 20; Bunch v. Potts, 57 Ark. 257; Com. v. Russell, 11 Ky. L. Rep. 576; Com. v. Kearns, 15 Ky. L. Rep. 332; State v. Hughes, 22 W. Va. 743; State v. American Express Co., 118 Iowa 447; Benjamin, Sales, p. 374; State v. Wingfield, 115 Mo. 428, distinguished, and a consideration of the Missouri authorities. The conviction of de-

fendant in the court below rests upon an *obiter* remark in State v. Wingfield, 115 Mo. 428. We believe that case to have been correctly decided on the facts there presented, but that the language in that decision upon which this conviction is based was inadvertent, unnecessary to the decision and *obiter* pure and simple, seems to us equally clear. In this opinion we are not alone. The editor of L. R. A., commenting upon that decision in the note to Golightly v. Texas, 2 L. R. A. 384, points out that this language is *obiter* and also that it is contrary to the weight of authority. (2) The transaction shown in evidence constituted interstate commerce within the meaning of section 8, article 1, of the Constitution of the United States, and it is and was beyond the power of the State of Missouri to restrict, prohibit or interfere therewith. Hanley v. Railroad, 187 U. S. 617; U. S. v. Railroad, 152 Fed. 269; Shepley v. Cowan, 52 Mo. 559; Hazeltine v. Bank, 155 Mo. 66.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1) The uncontradicted evidence shows that the whiskey which was sold by defendant to the prosecuting witness was sent by defendant's agents from Kansas City to Webster county, and that the sale was in Webster county. This question has been so recently decided by this court that it is hardly necessary to further discuss the same. In deciding that question, Judge Burgess, in delivering the opinion of this court, said: "A different rule prevails where the purchase money does not accompany the order, and by direction of the vendor the goods are not to be delivered until the purchase money is paid. In such case the sale is not complete until the conditions are complied with, and this would be at the point of destination of the goods shipped. Such is the law in regard to the ship-

ment of goods or personal property, C. O. D., by express companies, which implies that the goods are not to be delivered until charges and collections are paid." State v. Wingfield, 115 Mo. 437; State v. O'Neil, 58 Vt. 161; 1 Benjamin on Sales, sec. 360; Tiedeman on Sales, secs. 95 and 207; 1 Mechem on Sales, secs. 540-544; 1 Hutchinson on Carriers (3 Ed.), secs. 226, 734 and 735; State v. Betz, 106 S. W. 64. These authorities, and others, all hold that the delivery of goods to an express company to be delivered to the purchaser, upon the payment of the price thereof, and not until the price is paid, leaves the title in the owner and the sale is not completed until the goods are delivered by the express company and the purchase price paid. In such a case, the sale, of course, is made at the time and place when and where the express company delivers the goods to the purchaser and receives the purchase price, which place in this case was Webster county. (2) The evidence is not sufficient to bring this case within the law on the subject of interstate commerce. It is true that the authorities hold that the shipping of goods from a point in the State to another point in that State over a line of railroad which passes through another State, constituted said shipment an interstate shipment. Judson on Taxation, p. 12; Hanley v. Railroad, 186 U. S. 617; Snyder on Interstate Commerce Act, pp. 14 and 15.

BURGESS, J.—At the September term, 1907, of the circuit court of Webster county, under an information filed by the prosecuting attorney of said county, charging the defendant with selling one gallon of whiskey in said county, on the 2d day of February, 1907, to one Ira Morton, in violation of the Local Option Law in full force and effect in said county at that time, the defendant was found guilty and his punishment assessed at a fine of three hundred dollars. De-

fendant appealed in due course, after filing unsuccessful motion for new trial and in arrest of judgment.

The evidence tended to prove that the defendant was a wholesale and retail liquor dealer, with office and place of business in Kansas City, Jackson county, Missouri, and did business under the trade name of "Penwood Company." Ira Morton, a resident of Marshfield, in Webster county, Missouri, some time in January, 1907, ordered a gallon of whiskey from said Penwood Company, and on February 2, 1907, the whiskey was received by him from the agent of the Wells-Fargo Express Company, at the office of said company in Marshfield. The whiskey was sent in a package marked C. O. D., and Morton paid said express agent the price thereof, $3.50, at the time of delivery, and the express agent sent the money to defendant's office at Kansas City, where it was received. Morton testified that he mailed the order to defendant of his own motion, without any solicitation on the part of defendant, or any one on his behalf, and solely because he wanted the liquor for his own use. The express company received the package containing the whiskey from one of the defendant's employees at Kansas City, and shipped the same to Morton, at Marshfield. The evidence further tended to prove that the transaction was carried out by defendant's clerks, without his knowledge, while he was at Hot Springs, Arkansas; that while he had been making similar sales and shipments, on C. O. D. terms, to parties in other States, he had no knowledge that his clerks were making for him any such shipments to any local-option county in Missouri; that he had never solicited any business of that kind in Missouri either by agent or through the mails, and that up until the time of his arrest he was unaware that any such shipments had been made, nor had he authorized any.

The State introduced evidence tending to prove

that at the time of the alleged sale of liquor, and prior thereto, the Local Option Law was in force in Webster county.

The important question presented by this appeal is whether the place of sale of the liquor which the defendant is charged with selling unlawfully was in Webster county or Jackson county, Missouri. Defendant insists that the sale was at Kansas City, Jackson county, where he was authorized by law to sell liquor, and that he was guilty of no offense in accepting and filling an order from a party in a local-option county requesting the shipment to him, C. O. D., of a specified amount of liquor, to a point in said local-option county of Webster.

As a general rule the delivery of goods by the vendor to the carrier, when the goods are to be sent that way, is equivalent to delivery to the purchaser, subject only to the right of stoppage *in transitu*. [2 Kent's Com., 490; State v. Wingfield, 115 Mo. 428; Kerwin & Co. v. Doran, 29 Mo. App. 397; Garbracht v. Commonwealth, 96 Pa. St. 449; Dunn v. State, 8 S. E. 806.] And this is true although the purchase money is afterwards collected by the vendor or agent at the place from which the goods are shipped. [State v. Hughes, 22 W. Va. 743.]

But when the goods are shipped upon order C. O. D., as in the case at bar, there is much conflict in the authorities as to where and when the title passes, that is, whether at the point of shipment or at the point of destination, upon payment of the purchase price. In American Express Co. v. Iowa, 196 U. S. 1. c. 143, it is said: "True, as suggested by the court below, there has been a diversity of opinion concerning the effect of a C. O. D. shipment, some courts holding that under such a shipment the property is at the risk of the buyer, and, therefore, that delivery is completed when the merchandise reaches the hands of the carrier

for transportation; others, deciding that the merchandise is at the risk of the seller, and that the sale is not completed until the payment of the price and delivery to the consignee at the point of destination.''

Among the authorities which hold that a sale C. O. D. is not complete until delivery, acceptance, and payment of the purchase price by the person ordering the goods, may be cited: United States v. Shriver, 23 Fed. 134; United States v. Cline, 26 Fed. 515; State v. United States Express Co., 70 Iowa 271; State v. Wingfield, 115 Mo. 428; State v. O'Neil, 58 Vt. 140; State v. Goss, 9 Atl. 829; United States v. Chevallier, 107 Fed. 434; Baker v. Bourcicault, 1 Daly (N. Y.) 23; Crabb v. State (Ga.), 15 S. E. 455; Dunn v. State, 82 Ga. 27; State v. Intoxicating Liquor (Vt.), 2 Atl. 586; Wagner v. Hallack, 3 Colo. 176; O'Neil v. Vermont, 144 U. S. 323; Town of Canton v. McDaniel, 188 Mo. 207. But in 17 Am. and Eng. Ency. of Law (2 Ed.), 301, it is said: ''At least so far as cases dealing with intoxicating liquors are concerned, however, the weight of authority is against the foregoing view, and it is generally held that where intoxicating liquors are ordered to be shipped C. O. D., the sale is completed when the liquor is delivered to the carrier;'' citing Pilgreen v. State, 71 Ala. 368; Hunter v. State, 55 Ark. 357; Berger v. State, 50 Ark. 20; Bunch v. Potts, 57 Ark. 257; Com. v. Russell, 11 Ky. L. Rep. 576; Com. v. Kearns, 15 Ky. L. Rep. 332; Current v. Com., 11 Ky. L. Rep. 764; James v. Com., 42 S. W. 1107; State v. Intoxicating Liquor, 73 Me. 278; Com. v. Fleming, 130 Pa. St. 138; State v. Flanagan, 38 W. Va. 53; State v. Hughes, 22 W. Va. 743. The same doctrine is announced by the courts of Texas and other States.

In Com. v. Fleming, supra, it is decided that the term ''C. O. D.'' placed upon an express package, means that the carrier is thereby directed to collect

the price of the goods at the time of delivering them to the consignee, and to withhold such delivery until payment is made, and is authorized, upon receipt of such payment, to discharge the purchaser of the goods from liability for their price; that "when, in pursuance of an order for goods, directed by the purchaser to be shipped to him C. O. D., the vendor has delivered them to a common carrier, with instructions to collect their prices from the consignee before delivering them to him, the transaction as a sale is complete so far as the vendor is concerned. In such case, while the title to the goods does not pass to the purchaser if they be not delivered to him by the carrier, that circumstance does not affect the character of the transaction as a completed contract of sale; the seller's right to recover the price, if the purchaser refuses to take the goods, is as complete as if he had taken them without payment." In that case the facts were that a liquor dealer in a certain county of Pennsylvania received an order for liquor to be shipped to the purchaser in another county of said State, C. O. D., and in pursuance of the order the dealer delivered the liquor to a common carrier in the county where the dealer resided for shipment to the vendee, at the latter's expense, C. O. D. It was held that the delivery to the carrier was a delivery to the purchaser in such a sense as to complete the sale in the county from which the shipment was made. The same doctrine is announced and upheld by a long line of decisions of the courts of Texas; also in State v. Flanagan, 38 W. Va. 53; American Express Co. v. Iowa, 196 U. S. 133, and Adams Express Co. v. Kentucky, 206 U. S. 138.

What was said by this court upon this question in State v. Wingfield, supra, and in Canton v. McDaniel, supra, was unnecessary to a decision of either of those cases, because the shipments were not C. O. D., and therefore what was said respecting such shipments

in those cases may properly be regarded as *obiter;*
and while the *dicta* are supported by many high author-
ities, we are satisfied that the weight of authority is
contrary to what is announced in those cases as the
law.   The great mercantile interests of the country
seem to demand that the law by which such interests
are governed should be uniform, and we are of opin-
ion that, so far as concerns the title to goods delivered
to a carrier for shipment, the same rule applies to
C. O. D. shipments as to those in ordinary cases, in
the absence of any express contract to the contrary
between the shipper and the consignee.

There is no question that Morton ordered the
liquor in question for his own use, C. O. D., and when
it was so shipped, the sale became complete at the
place of shipment.

The defendant next insists that the transaction
shown in evidence constituted interstate commerce
within the meaning of section 8, article 1, of the Con-
stitution of the United States, for the reason that
the route of the shipment was partly through the
State of Kansas, and that it is and was beyond the
power of the State to restrict, prohibit or interfere
therewith.   Upon the other hand, the State contends
that the shipment in question was not an interstate
shipment, that is, a shipment from one State to an-
other, and that whether it was so or not is immaterial
in this case, which is a prosecution for the unlawful
sale of liquor in a county which had theretofore adopted
the Local Option Law.   The question was properly
presented by instructions asked by the defendant, and
refused by the court, to which action of the court the
defendant saved an exception.

Conceding, for the sake of argument, that the ship-
ment was interstate, as contended by defendant, we
cannot see how or in what way such fact is available

212 Sup—42

State v. Railroad.

to him as a defense in this case. This is simply a prosecution for the alleged unlawful sale of liquor in Webster county, Missouri, and whether its transportation into the county was a matter of interstate commerce or otherwise, as the liquor was sold in Jackson county, Missouri, is not material to any issue in the case.

Our conclusion is that the sale of the liquor was completed when shipped at Kansas City, Jackson county, Missouri, and not at Webster county, Missouri, as charged in the information.

The judgment should be reversed and the defendant discharged. It is so ordered. All concur, except *Woodson J.*, who concurs in what is said with respect to the place of sale of the liquor, but dissents from the view expressed on the last proposition, and *Valliant, J.,* who is absent.